

Feb 3, 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**15-80012-CR-ZLOCH/HUNT**

Case No. _____

18 U.S.C. § 1347
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

ISAAC KOJO ANAKWAH THOMPSON,

       Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment,

1.    The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries." Each beneficiary was assigned a unique Health Insurance Claim Number ("HICN").

2.    Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.    The Medicare program was divided into different "parts." "Part A" of the Medicare program covered health services provided by hospitals, skilled nursing facilities, hospices, and

home health agencies. "Part B" of the Medicare program covered outpatient hospital services and professional services provided by physicians and other providers; it also covered certain drugs provided "incident to" a physician's service and durable medical equipment. Parts A and B were the original Medicare program, in which Medicare pays health care providers fees for services rendered to beneficiaries.

4. The Medicare Advantage Program, also known as "Part C" and formerly known as "Medicare+Choice," provided Medicare beneficiaries with the option to receive their Medicare benefits through private managed care plans, including health maintenance organizations ("HMOs"). Medicare Advantage provided beneficiaries with all of the same services provided by Parts A and B (except hospice care), in addition to mandatory supplemental benefits and optional supplemental benefits.

5. In order to receive Medicare Advantage benefits, a beneficiary was required to enroll in a managed care plan operated by a private company approved by Medicare. Those companies were often referred to as Medicare plan "sponsors." A beneficiary's enrollment in a Medicare Advantage plan was voluntary.

6. Rather than reimbursing based on the extent of services provided, as in original Medicare, CMS made fixed, monthly payments to a plan sponsor for each Medicare Advantage beneficiary enrolled in one of the sponsor's plans, regardless of the services rendered to the beneficiary that month or the cost of covering the beneficiary's health benefits that month. These payments were referred to as "capitation" payments. CMS periodically adjusted the capitation payment associated with each beneficiary. CMS determined a beneficiary's capitation payment

based on a variety of factors, including the beneficiary's age, sex, and county of residence, and whether the beneficiary resided in an inpatient facility.

7. In addition, the extent of a capitation payment was adjusted based on the beneficiary's health status. CMS generally made larger capitation payments for beneficiaries with more serious medical conditions. CMS determined a beneficiary's health status in part based on medical diagnoses submitted by the beneficiary's Medicare Advantage plan. When a physician treated a beneficiary, the physician generally reported the beneficiary's diagnosis to the Medicare Advantage plan sponsor. The plan sponsor generally reported these diagnoses to CMS. Diagnoses were reported to CMS using codes specified in the Ninth Revision of the International Classification of Diseases ("ICD-9 codes"). CMS used these diagnoses to adjust the capitation payment associated with the beneficiary.

8. Defendant **ISAAC KOJO ANAKWAH THOMPSON**, a resident of Palm Beach County, was a licensed medical doctor.

9. Isaac K. A. Thompson, M.D., P.A. ("IKAT") was a Florida corporation with a principal place of business in Delray Beach, in Palm Beach County, in the Southern District of Florida. It was incorporated on February 6, 1996. **ISAAC KOJO ANAKWAH THOMPSON** was the sole officer. IKAT primarily provided primary care to its patients. **THOMPSON** was the primary treating physician.

10. IM Medical P.A. was a Florida corporation with a principal place of business in Boynton Beach, in Palm Beach County, in the Southern District of Florida. It was incorporated on February 2, 2004 and administratively dissolved on September 27, 2013. **ISAAC KOJO**

**ANAKWAH THOMPSON** was a director. IM Medical primarily provided primary care to its patients.

11.     Humana Inc. was a Medicare Advantage plan sponsor.

12.     IKAT and IM Medical were members of Humana's Florida HMO Network. If a member of a Humana Medicare Advantage plan selected IKAT or IM Medical as his or her primary care provider, Humana paid the medical center approximately 80% of the capitation payment associated with that beneficiary. The medical center was responsible for providing that beneficiary's primary care. In the event that a physician at the medical center referred the beneficiary for outpatient medical services by a specialist, the medical center was generally responsible for the cost for those services.

13.     Ankylosing spondylitis, a form of spondyloarthritis, was a chronic inflammatory disease of the spine. The symptoms included chronic inflammatory back pain, progressive stiffness, and decreased range of motion of the spine due to abnormal bone growth that can fuse the spine. Ankylosing spondylitis may be reported to Medicare using ICD-9 code 720.0.

14.     Sacroiliitis was an inflammation within the sacroiliac joints, which are located in the pelvis. The symptoms include chronic inflammatory buttock pain and abnormal bone growth that can fuse the sacroiliac joints. It is typically associated with spondyloarthritis, including ankylosing spondylitis. Sacroiliitis may be reported to Medicare using ICD-9 code 720.2.

15.     Inflammatory polyarthropathy, also known as polyarthritis, was a descriptive term referring to five or more inflamed, swollen, tender joints. Inflammatory polyarthropathy can be associated with a number of conditions, including rheumatoid arthritis. Inflammatory polyarthropathy may be reported to Medicare using ICD-9 code 714.9.

16. Major depressive affective disorder, also known as depression psychosis, is a severe form of depression involving psychosis, that is, a loss of contact with reality. Major depressive affective disorder may be reported to Medicare using ICD-9 code 296.20.

## Health Care Fraud

17. Beginning in or around January 2006 and continuing through in or around April 2010, the exact dates being unknown to the Grand Jury, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### ISAAC KOJO ANAKWAH THOMPSON,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program.

## Purpose of the Scheme and Artifice

18. It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by (a) causing IKAT and IM Medical to report to Humana false and fraudulent diagnoses of Medicare beneficiaries enrolled in a Humana Medicare Advantage plan, thereby increasing the capitated payments that Medicare made to Humana and that Humana in turn made to IKAT and IM Medical, (b) concealing the submission of the false and fraudulent diagnoses, and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

## Manner and Means of the Scheme and Artifice

The manner and means by which the defendant sought to accomplish the object and

purpose of the scheme and artifice included, among others, the following:

19. Beginning in or around January 2006 and continuing through in or around February 2010, **ISAAC KOJO ANAKWAH THOMPSON** caused to be submitted to Humana on behalf of IKAT false and fraudulent diagnoses of Medicare beneficiaries enrolled in Humana Medicare Advantage plans, when in truth and in fact the beneficiaries did not suffer from the diagnosed conditions. The falsely and fraudulently diagnosed conditions included ankylosing spondylitis.

20. Beginning in or around July 2006 and continuing through in or around April 2010, **ISAAC KOJO ANAKWAH THOMPSON** caused to be submitted to Humana on behalf of IM Medical false and fraudulent diagnoses of Medicare beneficiaries enrolled in Humana Medicare Advantage plans, when in truth and in fact the beneficiaries did not suffer from the diagnosed conditions. The falsely and fraudulently diagnosed conditions included Sacroiliitis, inflammatory polyarthropathy, and major depressive affective disorder.

21. Humana reported the false and fraudulent diagnoses to Medicare.

22. The false and fraudulent diagnoses caused Medicare to increase the capitation payments it made for treatment of many of these IKAT and IM Medical beneficiaries. In total, Medicare made excessive payments of at least $2,114,332.33 based on the false and fraudulent diagnoses.

23. Humana passed on approximately 80% of the fraudulently increased capitation payments to IKAT and IM Medical.

24. **ISAAC KOJO ANAKWAH THOMPSON** obtained control of the fraudulent proceeds that Humana paid to IKAT and IM Medical and diverted these monies for his personal use and benefit, as well as that of others.

### Acts in Execution and Attempted Execution of the Scheme and Artifice

25. On or about the dates indicated, in the Southern District of Florida, and elsewhere, **ISAAC KOJO ANAKWAH THOMPSON**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program, in that he caused to be submitted to Humana, on behalf of the specified entities, the specified diagnoses for the specified beneficiaries:

| Count | Date | Entity | Beneficiary Initials | HICN (last 5 digits) | Fraudulent Diagnosis |
|---|---|---|---|---|---|
| 1 | 2/8/2010 | IM Medical | MH | 9471A | Inflammatory polyarthropathy |
| 2 | 2/16/2010 | IKAT | BB | 2528A | Ankylosing spondylitis |
| 3 | 2/16/2010 | IKAT | EG | 5014A | Ankylosing spondylitis |
| 4 | 2/16/2010 | IKAT | RH | 3396A | Ankylosing spondylitis |
| 5 | 2/16/2010 | IKAT | CS | 4705A | Ankylosing spondylitis |
| 6 | 4/5/2010 | IM Medical | RI | 5697A | Major depressive affective disorder |
| 7 | 4/9/2010 | IM Medical | TV | 4666M | Major depressive affective disorder |

| Count | Date | Entity | Beneficiary Initials | HICN (last 5 digits) | Fraudulent Diagnosis |
|---|---|---|---|---|---|
| 8 | 4/9/2010 | IM Medical | MD | 6856A | Inflammatory polyarthropathy |

In violation of Title 18, United States Code, Sections 1347 and 2.

A TRUE BILL

_____<br>FOREPERSON

*[signature]*
WIFREDO A. FERRER
UNITED STATES ATTORNEY

*[signature]*
MARC OSBORNE
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| Isaac Kojo Anakwah Thompson, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| **Defendants.** _____ / | **Superseding Case Information:** |

**Court Division:** (Select One)

____ Miami   ____ Key West   New Defendant(s)   Yes ____  No ____
____ FTL   _X_ WPB   ____ FTP   Number of New Defendants ____
     Total number of counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:  (Yes or No)   No

   List language and/or dialect  _____

4. This case will take   10   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)

   I    0 to 5 days    ____           Petty    ____
   II   6 to 10 days   _X_            Minor    ____
   III  11 to 20 days  ____           Misdem.  ____
   IV   21 to 60 days  ____           Felony   _X_
   V    61 days and over ____

6. Has this case been previously filed in this District Court?  (Yes or No)   No
   If yes:
   Judge: _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers:   n/a
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____ Yes  _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____ Yes  _X_ No

                              _____
                              MARC OSBORNE
                              ASSISTANT UNITED STATES ATTORNEY
                              Florida Bar No./Court No. A5500796

*Penalty Sheet(s) attached                                    REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: __Isaac Kojo Anakwah Thompson__

Case No:_____

Counts #: 1-8

___Health Care fraud___

___Title 18, United States Code, Section 1347___

* **Max. Penalty**: 10 years' imprisonment, $250,000 fine, 3 years' supervised release, and restitution